# Exhibit B

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
+-----------------------------------------------+
|           RECEIVED                            |
|                                               |
|          MAY 2 3 2011                         |
|                                               |
|          LA CURACAO                           |
|       LEGAL DEPARTMENT                        |
+-----------------------------------------------+
```

NEDLOG COMPANY, an Illinois Corporation,  )
                                          )
            Plaintiff,                    )
                                          )
vs.                                       )    Case No. 11-cv-03164
                                          )
ADIR RESTAURANTS CORPORATION,             )
a California Corporation,                 )
                                          )
            Defendant.                    )

## NOTICE OF MOTION

TO:  **Certified Mail – Return Receipt &**          **Certified Mail – Return Receipt &**
     **UPS Next Day Air**                           **UPS Next Day Air**
     Elizabeth T. Van Horn                          Andrew Hatzis, Vice-President Operations
     Assistant General Counsel                      ADIR Restaurants
     Adir International, LLC                         1625 West Olympic Blvd., Suite 1020
     1625 West Olympic Blvd., Suite 1020            Los Angeles, CA 90015
     Los Angeles, CA 90015

    Please take notice that on the 26th day of May 2011, I shall appear before the Honorable
Judge Milton I. Shadur in courtroom 2303 at the Dirksen Federal Building, Chicago, Illinois at
the hour of 9:15 a.m. and, then and there, shall present **Amended Motion and Application for
Confirmation of Arbitration Award and Entry of Judgment**, a copy of which is hereby
served upon you.

                                        s/ Steven J. Rosenberg
                                        STEVEN J. ROSENBERG, P.C.
                                        Attorneys for Plaintiff

## PROOF OF SERVICE

    I, the undersigned, an attorney, state that I served this Notice on the above named person
at the above stated address by mailing a copy, certified mail – return receipt and by UPS Next
Day Air on this 20th day of May 2011.

                                        s/ Steven J. Rosenberg
                                        STEVEN J. ROSENBERG

Steven J. Rosenberg
STEVEN J. ROSENBERG, P.C.
53 West Jackson Boulevard, Suite 1740
Chicago, Illinois 60604
(312) 362-0400

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEDLOG COMPANY, an Illinois Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 11-cv-03164 |
| | ) | |
| ADIR RESTAURANTS CORPORATION, | ) | |
| a California Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

### AMENDED MOTION AND APPLICATION FOR CONFIRMATION OF ARBITRATION AWARD AND ENTRY OF JUDGMENT PURSUANT TO 9 U.S.C. § 9

Plaintiff, Nedlog Company (Nedlog), an Illinois Corporation, hereby moves for Confirmation of Arbitration Award and Entry of Judgment pursuant to 9 U.S.C. § 9 et seq. against Adir Restaurants Corporation (Adir), a California corporation and, in support, states the following:

### Jurisdiction

1.    "Subject matter jurisdiction for cases filed pursuant to §9 of the (Federal Arbitration) Act must be based upon either diversity of citizenship or the existence of a federal question and is not dependent upon the location in which the arbitration was made." *Loral Corporation v. Swiftships, Inc.*, 77 F.3d 420 (11th Cir. 1996).

2.    The Federal Arbitration Act alone does not confer subject matter jurisdiction. *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 1035 Ct. 927 (1983).   The Federal Arbitration Act requires "an independent basis for subject matter jurisdiction such as 28 U.S.C. §1331 federal question or 28 U.S.C. §1332 diversity of citizenship." *Oklahoma City Associates v. Wal-Mart Stores, Inc.*, 923 F.2d 791 (10th Cir. 1991).

3.      In this case the Court has diversity jurisdiction under 28 U.S.C. 1332(a)(1) and 28 U.S.C. 1332 (c)(1).  Plaintiff and defendant are incorporated and have their principal places of business in different states (Illinois and California respectively) and the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

## Background

4.      On or about January 21, 2008, the parties entered into a Master Agreement (attached as Exhibit A) which provided in part as follows:

> ". . . if the dispute(s) is still not so resolved by the parties, it shall then be settled solely by binding, non-appealable arbitration pursuant to the Commercial Arbitration Rules of AAA and judgment upon the award may be entered by any court having jurisdiction". (Exhibit 1, p. 4)

5.      On March 15 and 16, 2011, the parties engaged in an arbitration in Chicago, Illinois at the offices of the American Arbitration Association.  Adir was represented by its in-house counsel Elizabeth Van Horn.

6.      On May 3, 2011, the arbitrator issued an Award in favor of Nedlog and against Adir (attached hereto as Exhibit 2).

## 9 U.S.C. §9

7.      9 U.S.C. §9 provides in part that:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident, then the notice of the

application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court. (emphasis added)

      8.     In this case, the parties did not specify the court in which judgment should be entered; only that it "may be entered by any court having jurisdiction". (Exhibit 1, p. 6)

      9.     This court has subject matter jurisdiction to enter a judgment pursuant to 9 U.S.C. §9 and personal jurisdiction of the defendant Adir as a result of their participation in the arbitration in Chicago.

      10.    Notice of this Application to Adir is being made by certified mail and through the U.S. Marshal for the Central District of California.

### Request for Relief

      Pursuant to the Master Agreement, the Arbitration Award, and 9 U.S.C. §9, Nedlog hereby respectfully requests that:

      a) the Award of the Arbitrator be confirmed; and

      b) that judgment on the Award be entered in favor of Nedlog and against Adir in the amount of $148,497.44.

                                          Respectfully Submitted:

                                        STEVEN J. ROSENBERG, P.C.

                                        Attorneys for Plaintiff

Steven J. Rosenberg
STEVEN J. ROSENBERG, P.C.
53 West Jackson Boulevard
Suite 1740
Chicago, Illinois 60604
(312) 362-0400

## MASTER AGREEMENT

This Agreement is made as of January 21, 2007, by and between ADIR Restaurants – Pollo Campero ("ADIR") and The Nedlog Company ("Nedlog"), with reference to the following facts:

A.    ADIR is a master franchisee of Pollo Campero, which is a Guatemala-based family restaurant chain with the vision of being the leading Latin American chicken restaurant chain in the world. As of today, approximately 200 restaurants operate under the Pollo Campero name in eight countries. ADIR currently has the sole and exclusive rights to determine the number of Pollo Campero restaurants that will exist in the California and Arizona markets, as well as in other states in the Western United States. In its restaurants, ADIR offers a line of carbonation-free beverages that it calls "Tropical Drinks".

B.    Nedlog is a family owned small business that manufactures and markets carbonation-free beverage bases for blended fruit drinks, including Tropical Drinks. In the manufacture of certain of those beverage bases, Nedlog utilizes crushed fresh fruit, blended with purees and/or concentrated fruit juices. To enable its customers to prepare and serve its Products as efficiently as possible, Nedlog has developed and makes available proprietary dispensing systems that combine state-of-the-art post-mix and cleaning technology with traditional visual display merchandising dispensers such as Crathco.

C.    ADIR wishes to standardize its Tropical Drinks, and wishes to incorporate the advantages offered by Nedlog's proprietary dispensing systems into its restaurants. Nedlog owns several formulas of Tropical Drinks that it has developed for Pollo Campero and its franchisees that it offers to pack in 3-gallon Bag-in-Box under a proprietary Pollo Campero label ("Products"). Within the Strategic Partnership evolving between ADIR and Nedlog, Nedlog will be making a significant investment in dispensing equipment.

Based on the mutual commitments described below, the parties agree to the following:

## 1.    PURCHASE OF PRODUCTS

a.    ADIR wishes to roll out Products gradually, starting with installations in three restaurants. ADIR and Nedlog each expect that after a period of approximately thirty days, ADIR then will have become familiar with Products and with Nedlog's dispensing system. At that point, ADIR then plans to expand Products into all restaurants that it operates. All terms and conditions in this Agreement shall apply immediately for the restaurants operated by

**EXHIBIT**

**NO.   1**

b.    ADIR shall use Products to satisfy all requirements for carbonation-free Tropical Drinks in restaurants that it operates.

c.    ADIR shall use best efforts to maximize usage of Products in restaurants that it operates.

d.    ADIR agrees that, during each Agreement Year, 100% of the total gallons of carbonation-free Tropical Drinks that it purchases shall be Products.

e.    ADIR shall utilize its own, or Nedlog's, respective designated distributor networks to purchase Products.

f.    ADIR agrees to provide monthly velocity reports to Nedlog of all purchases of Products that restaurants that it operates make from ADIR's designated distributors.

## 2.   PROMPT PAYMENT DISCOUNT

a.    In order to offer its best and most competitive prices to ADIR, Nedlog wishes to receive payments for Products in no more than ten days from date of shipment either directly to any warehouse or restaurant operated by ADIR or to one of the independent distributors that services those restaurants.  In return for this prompt payment, Nedlog will reduce its price (FOB plant) for Products by one percent.  ADIR has direct control of payments to Nedlog only for warehouses or restaurants that it operates and that receive direct shipments from Nedlog.  ADIR will use its best efforts to encourage its designated distributors to make payments to Nedlog within Nedlog's discounted payment terms.

## 3.   PRODUCT PRICES

a.    The key cost components of Products are fruit juices, sweeteners, citric acid, and packaging.  With the exception of possible fluctuations in those key components, Nedlog guarantees the prices of Products for twelve months from date of this Agreement.  Nedlog is pleased to confirm the following prices (FOB plant) for Products for ADIR:

(I).  Maranon -- $.0257 per ready-to-drink (RTD) ounce ($59.25/case - $19.75/gallon)*.
      $.0244 per RTD ounce ($56.25/case - $18.75/gallon)**

(II).  Mango - $.0230 per RTD ounce ($53.00/case - $17.67/gallon)

(III).  Tamarindo -- $.0186 per RTD ounce ($42.85/case - $14.29/gallon)

(IV).  Mexican Horchata -- $.0175 per RTD ounce ($40.32/case - $13.44/gallon)

(V). Jamaica -- $.0167 per RTD ounce ($38.50/case - $12.84/gallon)

(VI). Clean-Rite (cleaning solution for dispensing system) – NO CHARGE/case. Each four flavor dispensing system that Nedlog installs in restaurants operated by ADIR should require approximately two cases per month of Clean-Rite.

As Nedlog negotiates more advantageous costs for ingredients that are used in Products, Nedlog will pass those cost reductions to ADIR in the form of lower prices per case (FOB Plant) for Products.

*Based on minimum system-wide usage of 1200 gallons per month of Maranon beverage base throughout the United States.

**Based on minimum system-wide usage of 3100 gallons per month of Maranon beverage base throughout the United States.

## 4.    TERM AND TERMINATION:

a.    This Agreement shall remain in effect for a term of 24 months from the date it is first signed by both parties.

b.    This Agreement shall be automatically renewed for successive 24-month terms unless either party gives written notice of non-renewal to the other no less than 30 days before the end of a term.

c.    This Agreement may not be terminated before the expiration of a term, except as described in paragraph 4 [b], or except that either party may terminate this Agreement on account of bankruptcy or insolvency of the other.

d.    Notwithstanding the term of this Agreement, if ADIR chooses to terminate its business relationship with Nedlog for any reason, ADIR agrees to purchase any inventory of Products that Nedlog then has in stock and proprietary raw materials that Nedlog then has in stock or has committed to purchase in order to service ADIR.

e.    Notwithstanding the term of this Agreement, if ADIR chooses to terminate its business relationship with Nedlog before sixty months have elapsed from the date that Nedlog first installs dispensing equipment in any restaurant(s) operated by ADIR then Nedlog shall have the right to sell all dispensing equipment then installed in that restaurant (or those restaurants) to ADIR at its then-unamortized value. If Nedlog chooses to exercise that right, ADIR then shall have the obligation to purchase that dispensing equipment at its then-unamortized value. Each dispensing system that Nedlog installs in restaurants operated by ADIR is capable of offering four different flavors.

5.    **RESPONSIBILITIES FOR DISPENSING SYSTEMS:**

    **a.**  In each restaurant that it operates and prior to installation of dispensing system, ADIR shall provide all cold water lines, access to 110 volt electricity, and both above counter and below counter space required by dispensing system.

    **b.**  At no additional cost to ADIR, Nedlog shall install one dispensing system in each restaurant in which ADIR has provided the necessary cold water lines, access to 110 volt electricity, and both above counter and below counter space required by dispensing system.

    **c.**  In addition to the initial installation and at no additional cost to ADIR, Nedlog shall provide up to four service calls each year (two preventive maintenance and up to two corrective maintenance) for its dispensing system in each restaurant operated by ADIR. Nedlog shall charge ADIR for the cost for any service call in excess of four per year for any dispensing system in each restaurant operated by ADIR.

    **d.**  ADIR shall pay the cost of repair or replacement of any damage to or destruction of any dispensing system in each restaurant operated by ADIR, normal wear and tear excepted.

6.    **FRIENDLY RESOLUTION OF ANY AND ALL DISPUTES:**

    In any relationship, it is recognized that honest disagreements or issues can arise between reasonable people. What follows in this section is a means to resolve these disagreements (if they arise), through friendly consultation, quickly and inexpensively, by keeping such issues in their proper perspective while continuing to implement the Agreement and enjoy the benefits thereof.

    **a.**  **THEREFORE, IT IS AGREED THAT ANY AND ALL DISPUTES BETWEEN NEDLOG AND ADIR UNDER THIS AGREEMENT SHALL BE SETTLED WITHOUT LITIGATION.**  If either party perceives that a problem has developed regarding the administration of or performance under this Agreement due to any action or inaction of the other party, the parties shall first attempt to informally resolve that alleged problem. If informal efforts do not yield a mutually satisfactory resolution, then either party may send a written notice to the other party, requesting a cure for that alleged problem. If the party receiving that written notice fails to cure that alleged problem within ten (10) days of having received written notice to do so, the parties have a dispute. The parties then agree to negotiate in good faith to settle any disputes within the following ten (10) days. Following this period (if the dispute(s) is still not so resolved by the parties, it shall then be settled solely by binding, non-appealable arbitration pursuant to the ....

AGREED THAT DURING THIS RESOLUTION PROCESS, BUSINESS BETWEEN THE PARTIES SHALL CONTINUE PURSUANT TO THIS AGREEMENT.

b.    Any dispute arising in connection with the termination of this Agreement shall be resolved by arbitration as described above.

**7.    ENTIRE AGREEMENT:**

This Agreement describes the entire business relationship between ADIR and Nedlog during the term of this Agreement, and supersedes all prior agreements between the parties. This Agreement may not be modified except by a writing signed by authorized officers of both parties.

**8.    NOTICES:**

All written notices required or permitted by this Agreement shall be given by certified mail, return receipt requested. Notices to Nedlog shall be addressed to: The Nedlog Company, 92 Messner Drive, Wheeling, IL 60090-6448, Attention: Mr. Glenn Golden, President/COO. Notices to ADIR shall be addressed to: ADIR Restaurants – Pollo Campero, 1625 W. Olympic Boulevard, Suite 1020, Los Angeles, CA 90015, Attention: M_ Andrew Hays_, V.P. CATERA Trails_

**9.    WAIVER:**

No failure to enforce any provision of this Agreement shall be deemed a waiver of this or any other provision of this Agreement. Neither party's right to require strict performance of this Agreement shall be affected by any prior course of dealing.

**10.    SUCCESSORS:**

Neither party shall sell or transfer all or any part of its business unless the transferee thereof agrees in writing to assume and be bound by this Agreement.

**11.    ACTS OF GOD:**

Either party is excused from performance of commitments described in this Agreement if such nonperformance results from any acts of God, strikes, war, riots, acts of governmental authorities, shortage of raw materials or any other similar cause outside the control of the nonperforming party.

## 12.  INDEMNITY:

Each party indemnifies and holds the other party harmless in any claim, action, or proceeding.  This indemnification survives termination of the Agreement.

## 13.  APPLICABLE LAW:

Laws of the State of Illinois shall govern this Agreement.

THE NEDLOG COMPANY

SIGNATURE: _____

PRINTED:  GLENN GOLDEN

TITLE:  President/COO

DATE:  November 30, 2007

ADIR RESTAURANTS – POLLO CAMPERO

SIGNATURE: _____

PRINTED:  ANDRES GANTZIS

TITLE:  VP OPERATIONS

DATE:  2/21/08

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL ARBITRATION PANEL

IN RE ARBITRATION OF

CASE # 51 517 01257 10

THE NEDLOG COMPANY,
            ("CLAIMANT")
AND                                                         Alyson S. DiGiuseppe, Case Manager

ADIR RESTAURANTS CORPORATION,
            ("RESPONDENT")

AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the Arbitration Agreement entered into by Claimant The Nedlog Company ("Nedlog") and Respondent ADIR Restaurants Corporation ("ADIR") on January 21, 2008 ("Master Agreement") and having been duly sworn and having duly heard the proofs and allegations of the Parties, hereby decide and AWARD as follows:

1. ADIR is liable to Nedlog (I) for damages for breach of Paragraphs 4(d) and (e) of the Master Agreement in the amount of $86,929.25, (ii) for reasonable attorney's fees in the amount of $58,140.00 and for the expenses of the Arbitration, pursuant to Paragraph 6(a) of the Master Agreement. The claims in ADIR's Counterclaim are denied.

2. ADIR, the master franchisee of Campero USA, operates a number of Pollo Campero "quick serve" chicken restaurants in Southern California. Nedlog, a Campero USA-approved supplier of non-carbonated beverages, contracted to supply ADIR with tropical fruit bases and beverage dispensers for 19 Pollo Campero restaurants.

3. Unfortunately ADIR's restaurants and Nedlog's equipment were not a "match made in heaven." ADIR experienced a number of difficulties with the mixing/dispensing equipment and therefore exercised its option not to renew, and effectively terminated, the Master Agreement at the end of the first 24 month term. However, ADIR did not pay Nedlog the amortized value of the equipment, which it retained, nor did it pay for the inventory Nedlog had purchased on ADIR's behalf as required by the Master Agreement. ADIR claimed in the Arbitration that (i) the equipment was defective and breached

EXHIBIT

NO. ___2___

the warranty of merchantability implied in the Master Agreement and (ii) it was, therefore, excused from paying for the equipment and for the inventory. ADIR counterclaimed that it was entitled to damages.

4. I find that the difficulties experienced by ADIR were primarily due to the fact that its employees did not know how to, or simply did not, use, maintain and care for the equipment in an appropriate manner and that the difficulties were not due to any defect in the equipment or any failure by Nedlog. An e-mail from Glen Golden of Nedlog to ADIR's Andrerw Hatzis, dated August 8, 2008, said it all:

> "I absolutely agree with you that the employees will be key to making Campero-label Tropical Drinks successful.". Ex. 14, Nedlog Bates 70

Nedlog made every effort to educate the ADIR employees. Because of the importance of assembling, utilizing and cleaning the dispensers properly, Nedlog provided each Restaurant with a "Care and Maintenance" manual and DVD describing in detail what had to be done for the equipment to work properly and what to do if it did not. The witnesses for ADIR including the Vice-President Operations, the Area Manager, and the General Manager of the busiest restaurant testified that they read the manual at the outset of the relationship but did not use it thereafter.

I find that the overwhelming cause of pump failure arose from ADIR's failure to clean those items properly and that the cause of overflowing was a failure of ADIR to hook up the lines properly, not broken sensors as ADIR maintained. Having found that water pressure at the busiest store was inadequate, Nedlog provided "water pressure boosters" The manager of that store testified she had no understanding of why the boosters were necessary. In short, Nedlog equipment needed specific conditions for optimum performance and ADIR did not provide those conditions.

5. I find that Nedlog's request for counsel fees of $125,000 for 340 hours of legal work by two attorneys is unreasonable under the circumstances of this case. The fee request was not strengthened by the fact that counsel was unable to provide either time or billing records. The absence of such records clearly undermines the reliability of the data presented.

This was a "one lawyer lawsuit". Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C., 574 F.3d 852 (7th Cir. 2009). There were no disputed legal issues, no discovery disputes, no depositions, and rather straightforward factual issues. The case was well and successfully tried by Claimant's counsel. Nonetheless Respondent's objections to the fee request are well taken: 70 hours of client meetings ( exclusive of trial preparation): 20 hours to review ADIR's prehearing brief; and 28 hours for a pre-hearing submission of a 3 page brief with one citation, a two page witness list with two witnesses, a two page stipulation of facts and a modest number of exhibits.

Under these circumstances I award fees for all of Mr. Rosenberg's trial and trial preparation time at his hourly rate and 80 % of Mr. McElvenny's pre and post trial time at his hourly rate. Thus, Nedlog will be awarded attorney's fees of $58,140.00 for a total of 172.8 hours. This contrasts with the 88.5 hour spent by ADIR's counsel. ADIR shall also bear Nedlog's additional copying expenses of $628.20.

6. The Administrative fees and expenses of the Association totaling $5,200.00 shall be borne entirely by ADIR Restaurants Corporation. The other administrative fees and expenses of the AAA, totaling $400.00, shall be borne entirely by ADIR Restaurants Corporation.

The compensation and expenses of the arbitrator totaling $10,189.09, shall be borne equally by The Nedlog Company and ADIR Restaurants Corporation.

Therefore, ADIR Restaurants Corporation shall reimburse The Nedlog Company the sum of $2,799.99, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by The Nedlog Company.

7. This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein, are denied.


SIGNED: _____          DATED: May 3, 2011
Jill W. Lundsberg, ARBITRATOR